UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CLINTON L. WYATT, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | No. 3:13-0853 |
| v. | ) | Judge Trauger/Brown |
| | ) | **Jury Demand** |
| NURSE FRASIER, CCA, INC., | ) | |
| *et al.,* | ) | |
| | ) | |
| Defendants | ) | |

**TO: THE HONORABLE ALETA A. TRAUGER**

**REPORT AND RECOMMENDATION**

Presently pending is a motion by the sole remaining Defendant in this case for summary judgment (Docket Entry 44). The Plaintiff has not responded to this motion. For the reasons stated below the Magistrate Judge recommends that the motion for summary judgment be GRANTED and this case be dismissed with prejudice. Further, the Magistrate Judge recommends that any appeal in the matter not be certified as taken in good faith.

**BACKGROUND**

The Plaintiff filed his original verified complaint in this matter (Docket Entry 1) on August 27, 2013. The original Defendants were Corrections Corporation of America (CCA) and Nurse Frazier. The complaint alleged that on June 20, 2013, while working in the kitchen he cut his left hand on a motor mount. He alleged that he ripped the top of his knuckle open down to the bone and the cut was vertical, deep, and bleeding badly. He alleged that Nurse Frazier looked at the wound, stated that it was not that serious,

and that all he needed was a band-aid. He believed that he needed stitches.

He alleged that the next day he bumped the wound getting out of his bunk and that it started to bleed again. He requested medical care and saw Nurse Henrich, who told him that the wound was deep and needed stitches. He stated that Dr. Bridges was consulted and told him that it was too late to receive stitches and that he was treated with strips on the wound. He alleged that the wound continued to reopen and that the strips that he was given continued to fall off, allowing continual reopening of the wound. He stated that in mid-July the wound became infected and he was given antibiotics and x-rays were ordered to see if he might have chipped the bone on his knuckle. He contended that when he complained to the medical director she told him that he had aggravated it by bumping it and declined to have any pictures taken of the hand He contended that it was protocol to take pictures of such wounds.

Judge Trauger reviewed the complaint under 28 U.S.C. § 1915(e)(2). She noted that the Plaintiff stated that he had not filed any other lawsuits in this court, or in any other federal or state court. She noted that this was untrue, that the Plaintiff had previously filed two lawsuits in the Middle District in 2012, both of which were dismissed on the initial review for failure to state a claim. She dismissed the claim against CCA because *respondeat superior* is not a proper basis for liability under § 1983. She found that the Plaintiff had sufficiently alleged a violation of

the Eighth Amendment for reasonable, necessary medical care, and allowed the case to proceed against Nurse Frazier. The matter was referred to the undersigned for case management and the preparation of a report and recommendation as to any dispositive motion (Docket Entry 9).

There was some difficulty in obtaining service of process on Nurse Frazier (Docket Entry 23). However, she was eventually served and filed an answer to the complaint on February 17, 2014 (Docket Entry 38). A scheduling order (Docket Entry 40) was entered, which provided that all discovery would be completed by July 24, 2014, and that dispositive motions would be filed by August 25, 2014. The Plaintiff was cautioned that dispositive motions must be responded to within 28 days unless an extension was granted by the Court. He was further advised that failure to respond to such motion and to statements of facts may result in the Court taking the facts alleged in the matter as true and granting the relief requested. The Plaintiff was also told that he could not just rely on his complaint and that he must show that there is a material dispute of fact with citations to the record, affidavits, or other matter of evidence. He was instructed to read and comply with Federal Rule of Civil Procedure 56, and Local Rule 56.01. The order specifically provided that if dispositive motions were filed earlier than the deadlines, then responses and reply dates of that motion would be moved up accordingly.

The Defendant promptly filed a motion for summary judgment (Docket Entry 44, supported by a memorandum of law (Docket Entry 45), and a statement of material facts (Docket Entry 46), along with affidavits of Dr. Bridges, Nurse Frazier and Nurse Henrich (Docket Entries 47, 48 and 49). The Plaintiff filed a motion requesting an extension of time to respond to the motion for summary judgment until May 21, 2014, so that he could complete his discovery. His motion was promptly granted (Docket Entry 51). Nothing further has been filed by the Plaintiff.

Nurse Frazier contends that she cannot be liable because the Plaintiff cannot establish that she was deliberately indifferent to his serious medical needs. She contends that she provided appropriate medical treatment of his cut and that the complaint cannot proceed when it simply involves a difference of opinion regarding the decision of a medical provider. She further contends that the Prison Litigation Reform Act requires that he suffer a physical injury that is more than de minimis. She contends that he did not suffer physical injury as a result of her treatment of the cut.

The Defendant's statement of undisputed material facts (Docket Entry 46) was not responded to. Therefore, under Local Rule 56.01(g), failure to respond to a moving party's statement of material facts shall indicate that the asserted facts are not disputed for the purpose of summary judgment. The Defendant's statement of undisputed material facts states that the Defendant

cleaned the wound with normal saline, applied a topical ointment to the cut, and covered it with a band-aid and instructed him about the importance of keeping the cut clean and dry and to apply additional band-aids as needed to the cut. The statement further provides that a few hours later the Plaintiff returned to the medical department and explained that he had hit his hand on something and reinjured the cut and was examined by Licensed Practical Nurse (LPN) Henrich. The cut was also examined by Dr. James Bridges who determined that stitches were not appropriate to treat the injury and provided the Plaintiff with cleaning instructions and directed LPN Henrich to close the cut with steri-strips and wrap the hand with gauze. The statement further states that at no time did LPN Henrich state to Plaintiff that he should have received stitches or express any disbelief that he had not received stitches previously. Further, that Dr. Bridges also determined that Frazier's previously treatment of Plaintiff's initial cut with ointment and a band-aid was medically appropriate.

The statement continues on that since July 19, 2013, the Plaintiff has not complained of any problem with his cut or his left hand, and further that the Plaintiff has suffered no damage to his hand as a result of Frazier's treatment and that he suffered no permanent damage as a result of the cut and reinjury he sustained.

As noted above, the Plaintiff has not responded to these statements. The Plaintiff was specifically cautioned, as noted above (Docket Entry 40), that he could not just rely on his

complaint, but must show that there is a material dispute of fact with citations to the record, affidavits, or other matter of evidence, and was specifically referred to Federal Rule of Civil Procedure 56 and Local Rule 56.01.

The affidavit of the Defendant Frazier, a licensed LPN (Docket Entry 48) is entirely consistent with the statement of undisputed material facts. She stated in her affidavit that on June 20th she did treat the Plaintiff for a small cut he received on his left hand on top of his index finger above the left knuckle. She stated that the cut was not deep and did not require stitches, that she cleaned it with a normal saline solutions applied a topical ointment to the cut, and covered it with a band-aid. She did not recall Plaintiff requesting stitches, and in her medical opinion, the cut did not require stitches.

LPN James Henrich's affidavit (Docket Entry 49) is also consistent with the statement of material facts. He stats that the Plaintiff did seek treatment on June 20th complaining that he had reinjured a cut he had suffered earlier and requested medical treatment. He stated that he had examined it and requested Dr. Bridges to examine the cut. He states that Dr. Bridges examined the cut and instructed him to clean the cut with a solution known as Hibiclens, close the cut with steri-strips and wrap his hand with gauze. He states he followed the instructions and instructed the Plaintiff to return to the medical department the next day so that they could assess how the cut was healing. He denies that at any

point did he state that he should have received stitches or express any concern that he had not received stitches previously. He states that he further examined and treated the Plaintiff on June 24, 25, and 26, and July 5, 2013. He stated that the wound appeared to be healing well and with no signs of infection. He stated that the final visit was on July 19, 2013, and since that time the Plaintiff has not complained of any problems with his cut or his left hand. In his opinion the Plaintiff suffered no damage to his hand as a result of Frazier's treatment and his suffered no permanent damage.

A final affidavit is that of Dr. James Bridges (Docket Entry 47), who stated that he examined the Plaintiff on June 20th for a cut on the left knuckle of his index finger. When he examined the Plaintiff he was informed that the Plaintiff had cut his knuckle earlier, received treatment, and then reinjured it several hours later by hitting his hand on something. He stated that after examining the Plaintiff he determined that stitches were not appropriate and that he instructed the medical provider to clean the cut, close the cut with steri-strips and wrap the hand with gauze, and for him to return the next day so that medical personnel could assess how the cut was healing. He stated unequivocally that he believed it was medically appropriate for Frazier to treat the initial cut with ointment and a band-aid. He further stated that the cut was examined and appropriately treated on June 24, 25, 26 and July 5, 2013, and that during this period that cut was healing well with no signs of infection.

Dr. Bridges next saw the Plaintiff on July 8th when the Plaintiff complained that his cut was swollen. Dr. Bridges examined the cut and determined that it was infected and prescribed an antibiotic and ordered an x-ray to insure that he did not suffer an injury to his bone. He states the x-ray did not show any fracture or injury to the bone as a result of the cut. He states that Plaintiff last visited the medical department on July 19, 2013, for treatment of the cut and that since that time the Plaintiff has not complained of any problems with his left hand. He further stated that the Plaintiff suffered no damage to his hand as a result of Frazier's treatment and did not suffer permanent damage as a result of the cut or the reinjury. He finally states that in view of the medical record and his personal knowledge, it was his professional opinion that the medical treatment provided to the Plaintiff for his cut during his incarceration at the detention facility was entirely appropriate. The Defendant did not attach any medical records. The only medical records filed were filed by the Plaintiff (Docket Entry 14).

**LEGAL DISCUSSION**

To prevail on a motion for summary judgment, the movant must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party

cannot simply "rest on its pleadings but must present some 'specific facts showing that there is a genuine issue for trial.'" *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). To defeat a motion for summary judgment, "the non-moving party must present evidence upon which a reasonable jury could find in her favor." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) (citing *Anderson*, 477 U.S. at 251). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient." *Tingle*, 692 F.3d at 529 (citing *Anderson*, 477 U.S. at 251). Finally, "[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

Even though the Plaintiff has not responded to the motion for summary judgment, the Magistrate Judge must nevertheless review the record to see if the motion for summary judgment is well-taken. In doing so, the Magistrate Judge has reviewed the complaint and the medical records provided by the Plaintiff (Docket Entry 14).[1]

1. First is a Progress Note (Docket Entry 14, page 9) electronically signed by LPN Frazier on June 20, 2013, at 06:01

---

[1] The Magistrate Judge will discuss the medical records in chronological order by date of treatment. It would have been helpful had the Defendants referenced these records in their memorandum and commented on the note about the severity of the wound/stitches in record 2 below.

hours where the Plaintiff subjectively complains that he "cut the top of my hand." The objective findings are "sm incision to top of index finger above left knuckle. No voiced complaints, but facial wincing and was sure it would hurt tomorrow. Skin warm, full range of motion for all fingers. Pulse normal." The wound was cleaned with "Normal Saline, applied TAO and band-aid. Educated on the importance of keeping clean, dry, apply band-aid as needed."

    2.    The next entry (Docket Entry 14, pp. 1,2) prepared by Nurse Henrich dated June 20, 2013 at 09:01 hours states that the chief complaint is "I scrapped my knuckle last night. I busted it open again today." In this report the injury is listed as avulsion.[2] A block is checked on page 2 that the "wound is severe/deep/requires stitches; bleeding is uncontrolled; laceration to the face, ear, nose, or eyelid; any stab wound." The report under further states that Dr. Bridges was consulted and that he directed:"cleanse with hibiclens, steri strips applied; wrap with gauze;" and to return to the clinic in the a.m., and that the Plaintiff was instructed to keep the wound clean and dry, signs of infection, to follow up with sick call if no improvement within four days, or if the condition worsened or fever, and that the steri strips would be left in place until they were off, and that the Plaintiff verbalized that he understood the instructions.

---

[2]Avulsion is defined in Dorland's Illustrated Medical Dictionary 32nd edition as the ripping or tearing away of a part, either accidentally or surgically.

3. Next, Docket Entry 14, page 7, are progress notes, signed by Henrich on June 24, 2013, but which appear to refer to a June 21, 2013, visit concerning "an "approx dime size avulsion, wound edges approximated well, clean and dry, steri strips intact, neg open, negative drainage noted at this time, old brown drainage noted to old dressing." The patient was instructed not to work in the kitchen until evaluated on June 26, 2013, and to keep the area clean and dry.

4. The next record is a Treatment Specialized Note (Docket Entry 14, page 8) electronically signed by LPN Helen Eldridge on June 24, 2013, in which the Plaintiff returned to medical for wound care and complained that he did not want to be off work, and it was explained that there was a risk of infection relating to getting his bandage dirty while working in the kitchen. It was noted under objective that the wound was "covered with 2 intact steri-strips. Small amount of brown discharge present on old bandage, no active draining noted. Old dressing was wet. Inmate advised to keep dressing clean and dry. Inmate has full ROM in his hand. Wound cleaned and clean dressing applied.

5. Next is a record electronically signed by LPN Henrich on June 25, 2013 (Docket Entry 14, page 10) that indicates the wound is healing, and that it was okay for the Plaintiff to go back to work and to continue wound check daily, and to keep wound dry.

6. Next is a Progress Note (Docket Entry 14, page 11) electronically signed on June 26, 2013, by LPN Henrich, which found that the wound was healing well with steri strips in place, with no problems noted other than impaired skin integrity. The Plaintiff was cleared to return to work with instructions to use band-aids and a latex glove to the hand while working in the kitchen and to return to the clinic if signs or symptoms of infection occurred.

7. The next record is Docket Entry 14, pages 3 and 4, dated July 5, 2013 (prepared by Nurse Henrich). The complaint is that patient states "my knuckle is swollen a little it has been discharging a little here and there a little bit." The Plaintiff further states "pain feels like stabbing all the time near the cut." The wound is described as three-quarters of an inch in length proximal first knuckle, with a depth of 0. It was further described under assessment as "scabbed, healing, dry wound, neg drainage noted, negative warmth + tenderness to palpation." Plaintiff was provided triple antibiotics ointment, band-aids and instructed to keep the area clean and dry.

8. Docket Entry 14, page 12) is a Progress Note electronically signed by MRC Adams and Dr. Bridges on July 8, 2013, which shows reflects that on July 8th the Plaintiff was seen concerning his knuckle wound and increased swelling at the site and had some yellow drainage plus pain and decreased strength with no fever. An x-ray was directed in order to rule out a fracture.

9. The last report dated July 19, 2013, Docket Entry 14, pages 5 and 6, showed that the Plaintiff complained "my left 1st knuckle is swollen and tender." The appearance of the injury is checked as raised and redness. The objective findings are stated as "+ quarter sized raised reddened area with scab noted neg drainage, noted + tenderness to palpation, neg streaking." It shows that Plaintiff was scheduled for an appointment with Dr. Bridges.

From the medical records provided, as well as the affidavit and the statement of uncontested material facts, the Magistrate Judge believes that the Defendants' motion is well-taken. There is simply no medical evidence that LPN Frazier was deliberately indifferent to the Plaintiff's serious medical needs or that she provided treatment that was deliberately indifferent with an intent to harm the Plaintiff.

For the purpose of this recommendation the Magistrate Judge will consider that the wound was severe based on the check on the medical records (Docket Entry 14, p. 2), although this assessment is not repeated thereafter. However, even conceding this point, the Plaintiff has failed to establish that LPN Frazier acted with deliberate indifference to a substantial risk of serious harm. *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010). The deliberate indifference standard embodies both objective and subjective components. *Carter v. Vandercook,* 59 F. Appx. 52, 54 (6th Cir. 2003). There is simply no evidence that the Defendant acted wantonly with deliberate indifference to his serious needs. As the

Sixth Circuit has pointed out, deliberate indifference entitles something more than negligence or even gross negligence. *Dajami v. Montgomery County*, 59 F. Appx. 740, 745 (6th Cir. 2003). The mere fact that the Plaintiff disagrees with the treatment does not automatically make the case one of constitutional dimensions. Where a prisoner has received some medical attention but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgment of prison officials and constitutionalize claims that sound in state court law. *Dowdy v. Toutt*, 2011 U.S.D. LEXIS 148007 at *6 (M.D. Tenn. Dec. 23, 2011).

The Magistrate Judge agrees with the Defendants' argument and brief on this point. The Supreme Court decision in *Estelle v. Gamble*, 429 U.S. 97 (1976) and *Farmer v. Brennan*, 511 U.S. 825, 831 (1994) forecloses this claim absent some proof beyond mere negligence. This is particularly true where the record shows consistent medical treatment over the next month.

The Magistrate Judge will therefore not address the second portion of the argument that Plaintiff suffered no serious physical injury. One of the early medical records (Docket Entry 14, p. 2) could support a severe injury as the block for "wound is serious" is checked. On the other hand, the Plaintiff was apparently seeking to return to work in the kitchen shortly after the injury and that block is not checked again.

**RECOMMENDATION**

For the reasons stated above, the Magistrate Judge recommends that the motion for summary judgement be GRANTED and this case be dismissed with prejudice and that any appeal therefrom not be certified as taken in good faith.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has **14 days** from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have **14 days** from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within **14 days** of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 106 S. Ct. 466, 88 L.Ed.2d 435 (1985), *Reh'g denied*, 474 U.S. 1111 (1986).

**ENTERED** this 23rd day of June, 2014.

/s/   Joe B. Brown
JOE B. BROWN
United States Magistrate Judge